371

## Lintner's Estate.

*John E. Malone,* for next of kin; *Harry L. Raub,* for estate.

APPEL, P. J., May 10, 1928.—Laura M. Lintner, formerly Laura M. Mc-Naughtan, testatrix, by will dated Nov. 30, 1926, gave all her estate absolutely to Charles Wesley Lintner, making him sole legatee and executor. She married him Jan. 25, 1927, and died May 29, 1927, childless.

Charles W. Lintner, the surviving spouse, claims the entire estate as sole legatee under the will; the collateral heirs of testatrix claim as next of kin, contending that the legacy to Lintner was revoked by the subsequent marriage, thus creating an intestacy of the whole estate, whereupon the estate would be divided, after the $5000 exemption, equally between Lintner and the collateral heirs. The latter base their contention upon the interpretation which they place on section 21 of the Wills Act of June 7, 1917, P. L. 403, which is as follows: "When any person, male or female, shall make a last will and testament and afterward shall marry . . . and shall die, leaving a surviving spouse . . . every such person, so far as shall regard the surviving spouse, . . . shall be deemed and construed to die intestate, and such surviving spouse . . . shall be entitled to such purparts, shares and dividends of the estate, real and personal, of the deceased, as if such person had actually died without any will."

We cannot agree with the interpretation made by the collateral heirs. The law never demands an unreasonable thing, and the above-quoted section of the Wills Act, therefore, cannot have been intended to lessen the estate of the surviving spouse. It is unreasonable to suppose that the act should have the effect of forcing upon the surviving spouse an estate less than that which he would take as a legatee under the will. The clear meaning of this section is that a will made before marriage is revoked by the marriage "so far as shall regard the surviving spouse," that is, *pro tanto.* If it were necessary to force this act upon every surviving spouse, and particularly upon this one, Charles W. Lintner, the only effect it would have here would be to revoke the will to the extent that the surviving spouse would take under the intestate laws, *i. e.,* after the $5000 exemption, one-half, and the rest of the estate, the other half, would go under the will, and, hence, to Lintner as well. For the whole will is not revoked; only such a part as may be affected by the surviving spouse taking the share which the law says, at least, shall go to him, and the will speaks for itself as to that part not touched by the award to the surviving spouse.

It is not necessary, however, to rely solely upon this reasoning to justify awarding the entire estate to Lintner, the surviving spouse and sole legatee. Under our interpretation of this section of the Wills Act, we are not compelled to apply it to this case unless we are specifically requested to, and, inferentially, the surviving spouse has failed to make such a request, since he claims as sole legatee, and hence seeks to enforce the provisions of the will as it was intended by testatrix. His claim as legatee is equivalent to an elec-

tion to take under the will. Section 21 of the Wills Act is none other than section 15 of the Act of April 8, 1833, P. L. 249, modified so as to make the law the same with regard to men and women alike. This section of the Act of 1833 was discussed in Fidelity Trust Co.'s Appeal, 121 Pa. 1. There a testator bequeathed one-half of his residuary estate to his betrothed, whom he married five days after the execution of the will. He subsequently died without issue of the marriage, and it was held that by the marriage the will had not been revoked as to the widow and that she was entitled to take under the provisions thereof. Judge Penrose, in his opinion in the court below, said, in commenting on section 15 of the Act of 1833: "The conclusion . . . is irresistible that the only object was the protection of the widow herself, and it is contrary to all rules of interpretation to permit an act designed to confer a benefit to be so enforced as to cause an injury." In the opinion of the Supreme Court, affirming the decision of the court below, Mr. Justice Paxson calls particular attention to the fact that section 15 of the Act of 1833 does not use the word *revoke* whatsoever, and goes on to say: "It is very clear, however, that under our Act of 1833 an antenuptial will can be avoided by the widow so far as her rights are concerned; that is to say, she can elect to come in and claim her share of her husband's estate under the intestate laws. In all other respects the will stands," and this particular statement is in line with our reasoning earlier in this opinion. Then later he says: "If she does not elect to make such claim, the will is not affected in any respect. . . . We regard the 15th section of the Act of 1833 . . . as an enabling act, . . . [and] being an enabling statute, it is to be construed liberally. . . . The act declares for remedy that the widow, whether provided for or not, should have her share of the estate under the intestate laws. But the act does not force it upon her. It is hers if she elect to take it, not otherwise. Being for her benefit, it is for her to elect to accept its benefits, and if the benefits under the will are greater than under the intestate laws, the statute ought not to be enforced against her option."

It is seen, then, that this section of the Act of 1917 should not be considered as operating without regard to the wishes of the surviving spouse, any more than did section 15 of the Act of 1833. It is an act to be used by him if he feels it necessary or desirous so to do. If he does not wish to employ its aid, as it would appear to be the case here, we will not force it upon him, and full effect will be given to the will as it was written. No contentions on the part of collateral heirs can force the surviving spouse to seek the assistance of the enabling statute, nor compel us to apply it.

The entire estate is awarded to Charles Wesley Lintner as sole legatee under the will of Laura M. Lintner.

Balance for distribution, as appears by account......... $22,067.28

*Distribution.*

To Charles Wesley Lintner, residue.................... $21,525.93
To Register of Wills, transfer inheritance tax.......... 541.35

$22,067.28

It is ordered and decreed that Charles W. Lintner, executor as aforesaid, do pay the amounts, as herein directed, to those respectively entitled to the same.

This report is confirmed *nisi.*

From George Ross Eshleman, Lancaster, Pa.